**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **NOV 1 5 2010** ★

**BROOKLYN OFFICE**

Adam Leitman Bailey
John M. Desiderio
William J. Geller
Scott J. Pashman
ADAM LEITMAN BAILEY, P.C.
120 Broadway, 17th Floor
New York, New York 10271
Phone: (212) 825-0365
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKY VIEW PARC PURCHASERS ASSOCIATION, JONATHAN LEE, CHUNG JOO LEE, YI FENG ZHANG, LEI GU, JENNIFER R. LEE, JOHN LEE, SUZANNE LEE, MICHAEL CHUANG, KONNIE CHUANG, SUE CHAN, STEPHANIE CHAN, HUAN JEN CHIN, HSUE TSUI CHIN, THOMAS S. CHIU, ZIAO HE MEI, KI SOOK CHOE, HA LIM CHOE, CECILIA CHIK TO CHU, JOY HONG, SONYA HONG, YANG HWI HONG, BU IK HONG, YOUNG A. HONG, CHUN HSUIH, TERENCE HSUIH, VICTOR HSUIH, WON HWANG, SUNG CHUL HWANG, JIAN JIN, MYUNG HEE JO, EDWARD RHEE HYUK JO, DUK KUYUM KIM, HYUN SOOK KIM, KANG SAN KIM, YOUNG OK KIM, MI K. KIM, KI H. KIM, MYONG JOONG KIM, YEONG UK KIM, YOUNG JA KWON, TOM LAI, DIANA HUI LAI, HANG KEI LEE, YU LEE, AMY LEUNG, WING YUEN LEUNG, WILLIAM LIEW, NANCY A. CHAN, EUN KYUNG NO, YUNHWA NO, JONG HWAN NO, BAK HO SHIN, YOO SUN SHIN, TOM LAI, CLEMENT TSO, LIN LO TSO, YIN QING WENG, LI PING WENG, BO KOON WONG, MEI LUK WONG, HOWARD WONG, PEI CHING YU, POK-YUEN YU, YUET CHU CHAN, NGAN CHO YUNG, GUO PING YANG, NGAN TUNG YUNG, YEUK NAM POON, | Case No. ECF Case |
| | **COMPLAINT** |
| | **CV10 - 5252** |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | GARAUFIS, J. |
| -against- | POHORELSKY, M.J. |

FTC RESIDENTIAL COMPANY II, LLC, AFC2, LLC,
JOSHUA L. MUSS, JASON A. MUSS, MICHAEL
DANA, RELATED SALES LLC, RELATED
MANAGEMENT COMPANY, L.P., ALLIED
FLUSHING SALES AND MARKETING LLC,
ALLIED FLUSHING MANAGEMENT, LLC, SKY
VIEW PARC MANAGEMENT LLC, and MICHAEL
LEVITT & RUBENSTEIN, LLC, as ESCROW
AGENT,

                           Defendants.

Plaintiffs, through their attorneys, Adam Leitman Bailey, P.C., for their Complaint against the Defendants allege as follows:

## TABLE OF CONTENTS

NATURE OF THE CASE ...................................................................................................4

THE DEVELOPMENT AND THE DEFENDANTS.....................................................6

THE PLAINTIFFS............................................................................................................10

    The Revoking Plaintiffs ...............................................................................................10

    The Equitably Revoking Plaintiffs.............................................................................16

JURISDICTION AND VENUE .......................................................................................43

THE SKY VIEW PARC OFFERING ...............................................................................44

PLAINTIFFS' ENTITLEMENT TO REVOKE UNDER ILSA ...................................46

NO ILSA EXEMPTIONS APPLY ...................................................................................47

    The Two-Year Construction Exemption...................................................................47

    The Builder's Exemption.............................................................................................48

    The Bona Fide Land Sales Exemption......................................................................48

    The 100 Unit Exemption.............................................................................................48

    The Intrastate Offering Exemption ...........................................................................49

No Other Exemptions Apply ............................................................................................ 50

EFFECT OF REVOCATION ........................................................................................... 50

PROPERTY NOT DESCRIBED IN RECORDABLE FORM ....................................... 51

FAILURE TO DISCLOSE REVOCATION OPTION ................................................... 53

FAILURE TO REGISTER AND ANTI-FRAUD ........................................................... 54

CLAIM I -- ILSA REVOCATION UNDER 15 U.S.C. § 1703(c) ................................. 56

CLAIM II -- ILSA REVOCATION UNDER 15 U.S.C. § 1703(d) ................................ 56

CLAIM III -- EQUITABLE REVOCATION UNDER 15 U.S.C. §§ 1703 & 1709 .................... 58

CLAIM IV -- REVOCATION AND DAMAGES UNDER 15 U.S.C. § 1703(a) & 1709 ........... 59

CLAIM V -- UNJUST ENRICHMENT ......................................................................... 60

DEMAND FOR JURY TRIAL ...................................................................................... 60

PRAYER FOR RELIEF ................................................................................................. 60

## NATURE OF THE CASE

1.      This is an action by contract vendees of newly constructed residential condominium apartments at Sky View Parc Residential Condominium Tower One & Tower Two and Sky View Parc Residential Condominium Tower Three (together, the "Condominium") in Flushing, New York, to enforce the revocation of their contracts, or to obtain equitable revocation thereof, and for damages pursuant to the federal Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 *et seq.* ("ILSA").

2.      The Plaintiffs, hardworking individuals and their families, had hoped to purchase condominium units in the Sky View Parc Condominium to use as their homes.

3.      They each made substantial contract deposits in the expectation that they would be able to obtain mortgages on their purchases and with assurances that the Sponsor had lined up preferred lenders to provide financing.

4.      However, when the mortgage market collapsed in late 2008, mortgage financing became unavailable on new projects like the Sky View Parc Condominium, and the Plaintiffs, now unable to close on their purchases, faced the loss of their contract deposits – often their entire life savings.

5.      Under ILSA, however, a federal statute designed to assure buyers that they are fully informed of the risks they are undertaking when purchasing in a new development – a statute the Sponsors simply ignored – each of the Plaintiffs are entitled to obtain refunds of their hard-earned contract deposits.

6.      Despite the Condominium's being fully subject to ILSA, and not qualifying under any exemption thereto, its sponsors, Defendants FTC RESIDENTIAL COMPANY II, LLC and AFC2, LLC (together, the "Sponsor"), entered into purchase agreements without ever registering

the Condominium with the U.S. Department of Housing and Urban Development ("HUD"), thus violating ILSA's registration requirement.

7.       Similarly, the Sponsor failed to provide the Plaintiffs, or anyone acting for them, with a property report prior to the execution of the purchase agreements for units in the Condominium, as also required by ILSA.

8.       Selling the units in an unregistered, non-exempt Condominium and failing to provide purchasers with a property report fully complying with ILSA are violations of 15 U.S.C. § 1703(a), entitling the Plaintiffs to damages and other relief, plus interest, costs and attorneys' fees.

9.       Where no ILSA property report was provided to a contract vendee prior to his or her execution of a purchase agreement, 15 U.S.C. § 1703(c) provides that the contract vendee has a two year period within which he or she may freely revoke his or her purchase agreement (unless it is otherwise exempt).

10.      In addition, ILSA provides that purchasers have a two year right to revoke where the purchase agreement does not include a description of the property sold in a form that may be recorded under applicable local law, a condition that the purchase agreements here fail to meet.

11.      Further, ILSA and its regulations require that where a contract vendee has a two year right to revoke, the Sponsor must clearly state the existence of such revocation option in each purchase agreement, a requirement that the Sponsor also failed to comply with.

12.      Certain of the Plaintiffs (the "Revoking Plaintiffs") requested revocation of their purchase agreements or refunds of their deposits within two years of their having signed the agreements (though they may have not known that they had the right to do so under ILSA).

13. The Sponsor, and Defendant MICHAEL LEVITT & RUBENSTEIN, LLC (the "Escrow Agent"), however, failed to recognize the Revoking Plaintiffs' revocations or to refund the purchase deposits of the Revoking Plaintiffs, though required to do so under ILSA.

14. Similarly, all other plaintiffs (the "Equitably Revoking Plaintiffs"), were never informed that they had a two year right to rescind, and had they known of that right, would have timely exercised their revocation right within the two year time period allotted by ILSA.

15. As such, the Equitably Revoking Plaintiffs are entitled to an equitable extension of their time to revoke, equitable revocation of their contract within that extended period and/or damages in the full amount of their purchase deposits.

16. As such, each of the Plaintiffs are entitled under 15 U.S.C. § 1709 to a judgment enforcing their actual or equitable revocation and awarding them the return of their contract deposits, plus interest, costs and attorneys' fees.

## THE DEVELOPMENT AND THE DEFENDANTS

17. Sky View Parc is a mixed use development in Flushing, Queens County, New York, which is being developed by Defendants FTC RESIDENTIAL COMPANY II, LLC and AFC2, LLC (together, the "Sponsor"), which was planned to ultimately include up to seven residential towers containing up to 1,300 condominium residences.

18. At issue herein are the first three towers constructed – Towers One, Two and Three – which are organized into two condominiums, one including Tower One and Tower Two and the other including Tower Three (collectively, the "Condominium").

19. Upon information and belief, Defendant FTC RESIDENTIAL COMPANY II, LLC, is a Delaware limited liability company with an office at 620 Eighth Avenue, 22nd Floor, New York, New York 10018.

20. Upon information and belief, Defendant AFC 2, LLC, is a Delaware limited liability company with an office at 118-35 Queens Boulevard, Forest Hills, New York 11375.

21. Defendant AFC 2, LLC, was the original sponsor of the Condominium under its original offering plans.

22. Upon information and belief, Defendant FTC RESIDENTIAL COMPANY, LLC, has assumed all of the rights, privileges, obligations, responsibilities, undertakings and liabilities of Defendant AFC 2, LLC, as Sponsor under the offering plans for the Condominium including, without limitation, all purchase agreements in respect of Unsold Units as defined under the offering plans, including the purchase agreements executed by the Plaintiffs herein.

23. The Sponsor is responsible for the development of the Condominium, and has sold, offered to sell and/or advertised for sale units in the Condominium.

24. Sponsor is considered the "developer" of the Condominium under 15 U.S.C. § 1701(5).

25. Upon information and belief, Defendant JOSHUA L. MUSS, an individual, is an indirect owner and a principal of the Sponsor, and is also a principal of Defendants ALLIED FLUSHING MANAGEMENT, LLC, and SKY VIEW PARC MANAGEMENT LLC.

26. Upon information and belief, Defendant JASON A. MUSS, an individual, is a principal and the managing member of Defendants ALLIED FLUSHING MANAGEMENT, LLC, and SKY VIEW PARC MANAGEMENT LLC.

27. Upon information and belief, Defendant MICHAEL DANA, an individual, is a principal of the Sponsor and is the President and CEO of Onex Real Estate Partners, whose affiliate, Onex Corporation, is an indirect owner of the Sponsor.

28.     Upon information and belief, Defendant RELATED SALES LLC is a Delaware limited liability company with an office at 60 Columbus Circle, New York, New York 10023.

29.     Upon information and belief, Defendant RELATED SALES LLC has been engaged as Selling Agent for the Condominium in replacement of Defendant ALLIED FLUSHING SALES AND MARKETING LLC.

30.     Upon information and belief, Defendant RELATED MANAGEMENT COMPANY, L.P., is a New York limited partnership with an address at 423 West 55th Street, New York, New York 10019.

31.     Upon information and belief, Defendant RELATED MANAGEMENT COMPANY, L.P. has been engaged as Managing Agent for the Condominium in replacement of Defendants ALLIED FLUSHING MANAGEMENT and SKY VIEW PARC MANAGEMENT LLC.

32.     Upon information and belief, Defendant ALLIED FLUSHING SALES AND MARKETING LLC is a New York limited liability company with an office at 133-04 39th Avenue, Flushing, New York 11354.

33.     Upon information and belief, Defendant ALLIED FLUSHING SALES AND MARKETING LLC was the original Selling Agent for the Condominium.

34.     Upon information and belief, Defendant ALLIED FLUSHING MANAGEMENT, LLC, is a New York limited liability company with an address at 118-35 Queens Boulevard, Forest Hills, New York 11375.

35.     Upon information and belief, Defendant ALLIED FLUSHING MANAGEMENT, LLC, was the original Managing Agent for Tower One and Tower Two of the Condominium.

36. Upon information and belief, Defendant SKY VIEW PARC MANAGEMENT LLC is or was a New York limited liability company with an address at 118-35 Queens Boulevard, Forest Hills, New York 11375.

37. Upon information and belief, Defendant SKY VIEW PARC MANAGEMENT LLC was the original Managing Agent for Tower Three of the Condominium.

38. Upon information and belief, Defendants JOSHUA L. MUSS, JASON A. MUSS, MICHAEL DANA, RELATED SALES LLC, and RELATED MANAGEMENT COMPANY, L.P. have assumed all of the rights and obligations of their predecessors to the Sponsor and have accepted, ratified, and committed to carrying out and participating in all prior plans, policies, and actions taken or projected on behalf of the Sponsor by their predecessors.

39. Upon information and belief, Defendants JOSHUA L. MUSS, JASON A. MUSS, MICHAEL DANA, RELATED SALES LLC, RELATED MANAGEMENT COMPANY, L.P., ALLIED FLUSHING SALES AND MARKETING LLC, ALLIED FLUSHING MANAGEMENT, LLC, and SKY VIEW PARC MANAGEMENT LLC ("ILSA Agents"), are all agents of the sponsor, as defined in 15 U.S.C. § 1701(6), because they have represented or acted on behalf of the Sponsor in selling or offering to sell units of the Condominium.

40. Upon information and belief, Defendant MICHAEL LEVITT & RUBENSTEIN, LLC (the "Escrow Agent"), is a New York law firm and professional services limited liability company with an address at 60 Columbus Circle, New York, New York 10023.

41. Upon information and belief, the Escrow Agent has been retained by the Sponsor to serve as escrow agent in connection with all purchase agreements entered into between Sponsor and contract vendees of units of the Condominium, including each of the Plaintiffs.

42. Upon information and belief, all escrowed funds in connection with all purchase agreements entered into between Sponsor and contract vendees of units of the Condominium, including each of the Plaintiffs, were previously held in escrow by Michael F. Seidenwar, Esq., with an address at Muss & Muss, 118-35 Queens Boulevard, Forest Hills, New York 11375.

43. Upon information and belief, the escrowed funds were transferred to Kramer Levin Naftalis & Frankel LLP and deposited in an escrow account at Wachovia Bank, 375 Park Avenue, New York, New York 10152, before they were subsequently transferred to the Escrow Agent.

## THE PLAINTIFFS

44. Plaintiff SKY VIEW PARC PURCHASERS ASSOCIATION is an informal, unincorporated association consisting of the Plaintiff Sky View Parc contract vendees herein who have associated themselves for the purpose of (a) jointly bringing this action against the defendants herein to seek revocation and/or rescission of their purchase contracts under ILSA and (b) to serve as an advocate and support group for other Sky View Parc contract vendees who are similarly situated and who also wish to enforce their rights under ILSA. The injury to the SKY VIEW PARC PURCHASERS ASSOCIATION resulting from the conduct of the Defendants alleged herein is coextensive with the injury sustained by each of its individual members.

## The Revoking Plaintiffs

45. Plaintiffs JONATHAN LEE and CHUNG JOO LEE are individuals and residents of New Jersey.

(a) Under a purchase agreement dated March 19, 2008, Plaintiffs JONATHAN LEE and CHUNG JOO LEE agreed to purchase unit 12M of Condominium

Tower 3 from the Sponsor for a purchase price of $690,000.00 under the terms and conditions thereof.

(b)     Plaintiffs JONATHAN LEE and CHUNG JOO LEE submitted an initial deposit of $69,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $69,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs JONATHAN LEE and CHUNG JOO LEE under the applicable escrow agreement.

(d)     On or about January 18, 2010, within two years of the date they signed their purchase agreement, Plaintiffs JONATHAN LEE and CHUNG JOO LEE, through their attorney, sent a letter to the Sponsor ("Jonathan and Chung Joo Lee Revocation Letter") which revoked the purchase agreement and demanded immediate payment of all money held on deposit under the purchase agreement.

(e)     On or about February 2, 2010, an attorney representing the Sponsor sent a letter to the attorney representing Plaintiffs JONATHAN LEE and CHUNG JOO LEE rejecting their request to revoke the purchase agreement.

(f)     Neither the Sponsor nor the Escrow Agent has made any payment to Plaintiffs JONATHAN LEE and CHUNG JOO LEE as demanded by the Jonathan and Chung Joo Lee Revocation Letter.

46.     Plaintiffs YI FENG ZHANG and LEI GU are individuals and residents of New York.

(a)     Under a purchase agreement dated May 11, 2009, Plaintiffs YI FENG ZHANG and LEI GU agreed to purchase unit 15C of Condominium Tower 3 from the Sponsor for a purchase price of $515,000.00 under the terms and conditions thereof.

(b)     Plaintiffs YI FENG ZHANG and LEI GU submitted an initial deposit of $51,500.00 with respect to unit 15C, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $51,500.00 with respect to unit 15C, plus accrued interest, in escrow for the benefit of Plaintiffs YI FENG ZHANG and LEI GU under the applicable escrow agreement.

(d)     Under a separate purchase agreement dated May 11, 2009, Plaintiffs YI FENG ZHANG and LEI GU agreed to purchase unit 15P of Condominium Tower 3 from the Sponsor for a purchase price of $515,000.00 under the terms and conditions thereof.

(e)     Plaintiffs YI FENG ZHANG and LEI GU submitted an initial deposit of $51,500.00 with respect to unit 15P, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(f)     Upon information and belief, the Escrow Agent holds a total deposit of $51,500.00 with respect to unit 15P, plus accrued interest, in escrow for the benefit of Plaintiffs YI FENG ZHANG and LEI GU under the applicable escrow agreement.

(g)     Under a separate purchase agreement dated May 11, 2009, Plaintiffs YI FENG ZHANG and LEI GU agreed to purchase unit 15Q of Condominium Tower 3 from the Sponsor for a purchase price of $555,000.00 under the terms and conditions thereof.

(h)     Plaintiffs YI FENG ZHANG and LEI GU submitted an initial deposit of $55,500.00 with respect to unit 15Q, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(i)     Upon information and belief, the Escrow Agent holds a total deposit of $55,500.00 with respect to unit 15Q, plus accrued interest, in escrow for the benefit of Plaintiffs YI FENG ZHANG and LEI GU under the applicable escrow agreement.

(j)     Upon information and belief, the Escrow Agent holds total deposits of $158,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs YI FENG ZHANG and LEI GU with respect to their agreements to purchase units 15C, 15P, and 15Q of Condominium Tower 3.

(k)     On or about July 15, 2010, within two years of the date they signed their respective purchase agreements with respect to units 15C, 15P, and 15Q of Condominium Tower 3, Plaintiffs YI FENG ZHANG and LEI GU, through their attorney, sent a separate letter with respect to each of units 15C, 15P, and 15Q to the Sponsor and the Escrow Agent ("Yi Feng Zhang and Lei Gu Revocation Letters") which revoked each of their three purchase agreements and demanded immediate payment of all money held on deposit under the purchase agreements.

(l)     On or about July 20, 2010, an attorney representing the Sponsor sent three separate letters to the attorney representing Plaintiffs YI FENG ZHANG and LEI GU rejecting their requests to revoke the purchase agreements with respect to units 15C, 15P, and 15Q of Condominium Tower 3.

(m)     Neither the Sponsor nor the Escrow Agent has made any payment to Plaintiffs YI FENG ZHANG and LEI GU as demanded by the Yi Feng Zhang and Lei Gu Revocation Letters.

47.     Plaintiffs JENNIFER R. LEE and JOHN LEE are individuals and residents of New York.

(a)     Under a purchase agreement dated February 22, 2008, Plaintiffs JENNIFER R. LEE and JOHN LEE agreed to purchase unit 7G of Condominium Tower 3 from the Sponsor for a purchase price of $430,000.00 under the terms and conditions thereof.

(b)     Plaintiffs JENNIFER R. LEE and JOHN LEE submitted an initial deposit of $43,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $43,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs JENNIFER R. LEE and JOHN LEE under the applicable escrow agreement.

(d)     On two occasions in January or February of 2010, Louis Balestriere, an attorney representing Plaintiffs JENNIFER R. LEE and JOHN LEE, placed telephone calls to the Sponsor in order to revoke the purchase agreement on behalf of Plaintiffs JENNIFER R. LEE and JOHN LEE.

(e)     Neither the Sponsor nor any attorney representing the Sponsor ever responded to Mr. Balestriere's telephone calls.

(f)     On or about April 9, 2010, Plaintiffs JENNIFER R. LEE and JOHN LEE filed an application with the Attorney General of the State of New York to seek the return of all money held on deposit under their purchase agreement.

(g)     Neither the Sponsor nor the Escrow Agent has made any payment to Plaintiffs JENNIFER R. LEE and JOHN LEE as they demanded.

48.     Plaintiff SUZANNE LEE is an individual and resident of New Jersey; Plaintiff JENNIFER R. LEE is an individual and resident of New York.

(a)     Under a purchase agreement dated March 23, 2008, Plaintiffs SUZANNE LEE and JENNIFER R. LEE agreed to purchase unit 12G of Condominium Tower 3 from the Sponsor for a purchase price of $495,000.00 under the terms and conditions thereof.

(b)     Plaintiffs SUZANNE LEE and JENNIFER R. LEE submitted an initial deposit of $49,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $49,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs SUZANNE LEE and JENNIFER R. LEE under the applicable escrow agreement.

(d)     On two occasions in January or February of 2010, Louis Balestriere, an attorney representing Plaintiffs SUZANNE LEE and JENNIFER R. LEE, placed telephone calls to the Sponsor in order to revoke the purchase agreement on behalf of Plaintiffs SUZANNE LEE and JENNIFER R. LEE.

(e)     Neither the Sponsor nor any attorney representing the Sponsor ever responded to Mr. Balestriere's telephone calls.

(f)     On or about April 8, 2010, Plaintiffs SUZANNE LEE and JENNIFER R. LEE filed an application with the Attorney General of the State of New York to seek the return of all money held on deposit under their purchase agreement.

(g)     Neither the Sponsor nor the Escrow Agent has made any payment to Plaintiffs SUZANNE LEE and JENNIFER R. LEE as they demanded.

49.    Plaintiffs JONATHAN LEE, CHUNG JOO LEE, YI FENG ZHANG, LEI GU, JENNIFER R. LEE, JOHN LEE, and SUZANNE LEE collectively constitute the Revoking Plaintiffs.

### The Equitably Revoking Plaintiffs

50.    Plaintiffs MICHAEL CHUANG and KONNIE CHUANG are individuals and residents of New Jersey.

(a)     Under a purchase agreement dated March 13, 2008, Plaintiffs MICHAEL CHUANG and KONNIE CHUANG agreed to purchase unit 11B of Condominium Tower 3 from the Sponsor for a purchase price of $735,000.00 under the terms and conditions thereof.

(b)     Plaintiffs MICHAEL CHUANG and KONNIE CHUANG submitted an initial deposit of $73,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $73,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs MICHAEL CHUANG and KONNIE CHUANG under the applicable escrow agreement.

(d)     Plaintiffs MICHAEL CHUANG and KONNIE CHUANG (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period

Complaint Page 16

to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

51.     Plaintiffs SUE CHAN and STEPHANIE CHAN are individuals and residents of New York.

(a)     Under a purchase agreement dated March 1, 2008, Plaintiffs SUE CHAN and STEPHANIE CHAN agreed to purchase unit 12B of Condominium Tower 3 from the Sponsor for a purchase price of $705,000.00 under the terms and conditions thereof.

(b)     Plaintiffs SUE CHAN and STEPHANIE CHAN submitted an initial deposit of $70,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $70,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs SUE CHAN and STEPHANIE CHAN under the applicable escrow agreement.

(d)     Plaintiffs SUE CHAN and STEPHANIE CHAN (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

52.     Plaintiffs HUAN JEN CHIN and HSUE TSUI CHIN are individuals and residents of New York.

(a)     Under a purchase agreement dated March 27, 2008, Plaintiffs HUAN JEN CHIN and HSUE TSUI CHIN agreed to purchase unit 8H of Condominium Tower 3

from the Sponsor for a purchase price of $715,000.00 under the terms and conditions thereof.

(b)     Plaintiffs HUAN JEN CHIN and HSUE TSUI CHIN submitted an initial deposit of $71,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $71,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs HUAN JEN CHIN and HSUE TSUI CHIN under the applicable escrow agreement.

(d)     Plaintiffs HUAN JEN CHIN and HSUE TSUI CHIN (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

53.     Plaintiffs THOMAS S. CHIU and ZIAO HE MEI are individuals and residents of New York.

(a)     Under a purchase agreement dated March 15, 2008, Plaintiffs THOMAS S. CHIU and ZIAO HE MEI agreed to purchase unit 7B of Condominium Tower 3 from the Sponsor for a purchase price of $690,000.00 under the terms and conditions thereof.

(b)     Plaintiffs THOMAS S. CHIU and ZIAO HE MEI submitted an initial deposit of $69,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)      Upon information and belief, the Escrow Agent holds a total deposit of $69,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs THOMAS S. CHIU and ZIAO HE MEI under the applicable escrow agreement.

(d)      Plaintiffs THOMAS S. CHIU and ZIAO HE MEI (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

54.    Plaintiffs KI SOOK CHOE and HA LIM CHOE are individuals and residents of New York.

(a)      Under a purchase agreement dated August 6, 2008, Plaintiffs KI SOOK CHOE and HA LIM CHOE agreed to purchase unit PH2D of Condominium Tower 1 from the Sponsor for a purchase price of $720,000.00 under the terms and conditions thereof.

(b)      Plaintiffs KI SOOK CHOE and HA LIM CHOE submitted an initial deposit of $72,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)      Upon information and belief, the Escrow Agent holds a total deposit of $72,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs KI SOOK CHOE and HA LIM CHOE under the applicable escrow agreement.

(d)      Plaintiffs KI SOOK CHOE and HA LIM CHOE (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had

expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

55.     Plaintiff CECILIA CHIK TO CHU is an individual and resident of New York.

(a)     Under a purchase agreement dated February 20, 2008, Plaintiff CECILIA CHIK TO CHU agreed to purchase unit 10F of Condominium Tower 3 from the Sponsor for a purchase price of $470,000.00 under the terms and conditions thereof.

(b)     Plaintiff CECILIA CHIK TO CHU submitted an initial deposit of $47,000.00, payable to the previous escrow agent with her submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $47,000.00, plus accrued interest, in escrow for the benefit of Plaintiff CECILIA CHIK TO CHU under the applicable escrow agreement.

(d)     On or about July 2, 2010, Plaintiff CECILIA CHIK TO CHU, through her attorney, sent a letter to the Sponsor and the Escrow Agent demanding to cancel her purchase agreement and immediate payment of all money held on deposit under the purchase agreement.

(e)     Neither the Sponsor nor the Escrow Agent has made any payment to Plaintiff CECILIA CHIK TO CHU as demanded by her letter.

(f)     Plaintiff CECILIA CHIK TO CHU (i) never received notice from the Sponsor that she had a right to revoke their purchase agreement under ILSA; (ii) did not learn about her revocation right until after the two-year period to revoke had expired; (iii) would have exercised her revocation option during the two-year period, if she had been informed of that right; and (iv) has incurred damages as a result.

56. Plaintiffs JOY HONG and SONYA HONG are individuals and residents of New York.

(a) Under a purchase agreement dated May 10, 2008, Plaintiffs JOY HONG and SONYA HONG agreed to purchase unit 10M of Condominium Tower 3 from the Sponsor for a purchase price of $675,000.00 under the terms and conditions thereof.

(b) Plaintiffs JOY HONG and SONYA HONG submitted an initial deposit of $67,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c) Upon information and belief, the Escrow Agent holds a total deposit of $67,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs JOY HONG and SONYA HONG under the applicable escrow agreement.

(d) Plaintiffs JOY HONG and SONYA HONG (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

57. Plaintiffs YANG HWI HONG and BU IK HONG are individuals and residents of New York.

(a) Under a purchase agreement dated April 6, 2008, Plaintiffs YANG HWI HONG and BU IK HONG agreed to purchase unit 7M of Condominium Tower 3 from the Sponsor for a purchase price of $645,000.00 under the terms and conditions thereof.

(b)     Plaintiffs YANG HWI HONG and BU IK HONG submitted an initial deposit of $64,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $64,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs YANG HWI HONG and BU IK HONG under the applicable escrow agreement.

(d)     Plaintiffs YANG HWI HONG and BU IK HONG (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

58.     Plaintiff YOUNG A. HONG is an individual and resident of New York.

(a)     Under a purchase agreement dated February 27, 2008, Plaintiff YOUNG A. HONG agreed to purchase unit 14R of Condominium Tower 3 from the Sponsor for a purchase price of $1,185,000.00 under the terms and conditions thereof.

(b)     Plaintiff YOUNG A. HONG submitted an initial deposit of $118,500.00, payable to the previous escrow agent with the submission of his purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $118,500.00, plus accrued interest, in escrow for the benefit of Plaintiff YOUNG A. HONG under the applicable escrow agreement.

(d)     Plaintiff YOUNG A. HONG (i) never received notice from the Sponsor that he had a right to revoke his purchase agreement under ILSA; (ii) did not learn about

his revocation right until after the two-year period to revoke had expired; (iii) would have exercised his revocation option during the two-year period, if he had been informed of that right; and (iv) has incurred damages as a result.

59. Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH are individuals and residents of New York.

(a) Under a purchase agreement dated February 26, 2008, Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH agreed to purchase unit 6A of Condominium Tower 3 from the Sponsor for a purchase price of $925,000.00 under the terms and conditions thereof.

(b) Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH submitted an initial deposit of $92,500.00 with respect to unit 6A, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c) Upon information and belief, the Escrow Agent holds a total deposit of $92,500.00 with respect to unit 6A, plus accrued interest, in escrow for the benefit of Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH under the applicable escrow agreement.

(d) Under a separate purchase agreement dated March 4, 2008, Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH agreed to purchase unit 11G of Condominium Tower 3 from the Sponsor for a purchase price of $475,000.00 under the terms and conditions thereof.

(e) Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH submitted an initial deposit of $47,500.00 with respect to unit 11G, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(f)     Upon information and belief, the Escrow Agent holds a total deposit of $47,500.00 with respect to unit 11G, plus accrued interest, in escrow for the benefit of Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH under the applicable escrow agreement.

(g)     Upon information and belief, the Escrow Agent holds total deposits of $140,000.00 with respect to the purchase agreements for units 6A and 11G, plus accrued interest, in escrow for the benefit of Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH under the applicable escrow agreement.

(h)     Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH (i) never received notice from the Sponsor that they had a right to revoke their purchase agreements under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

60.     Plaintiffs WON HWANG and SUNG CHUL HWANG are individuals and residents of New York.

(a)     Under a purchase agreement dated April 30, 2008, Plaintiffs WON HWANG and SUNG CHUL HWANG agreed to purchase unit 11M of Condominium Tower 3 from the Sponsor for a purchase price of $685,000.00 under the terms and conditions thereof.

(b)     Plaintiffs WON HWANG and SUNG CHUL HWANG submitted an initial deposit of $68,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $68,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs WON HWANG and SUNG CHUL HWANG under the applicable escrow agreement.

(d)     Plaintiffs WON HWANG and SUNG CHUL HWANG (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

61.     Plaintiff JIAN JIN is an individual and resident of New York.

(a)     Under a purchase agreement dated February 27, 2008, Plaintiff JIAN JIN agreed to purchase unit PH2-B of Condominium Tower 3 from the Sponsor for a purchase price of $735,000.00 under the terms and conditions thereof.

(b)     Plaintiff JIAN JIN submitted an initial deposit of $73,500.00, payable to the previous escrow agent with his submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $73,500.00, plus accrued interest, in escrow for the benefit of Plaintiff JIAN JIN under the applicable escrow agreement.

(d)     Plaintiff JIAN JIN (i) never received notice from the Sponsor that he had a right to revoke his purchase agreement under ILSA; (ii) did not learn about his revocation right until after the two-year period to revoke had expired; (iii) would have exercised his revocation option during the two-year period, if he had been informed of that right; and (iv) has incurred damages as a result.

62.    Plaintiffs MYUNG HEE JO and EDWARD RHEE HYUK JO are individuals and residents of New York.

(a)    Under a purchase agreement dated February 26, 2008, Plaintiffs MYUNG HEE JO and EDWARD RHEE HYUK JO agreed to purchase unit 12Q of Condominium Tower 3 from the Sponsor for a purchase price of $545,000.00 under the terms and conditions thereof.

(b)    Plaintiffs MYUNG HEE JO and EDWARD RHEE HYUK JO submitted an initial deposit of $54,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)    Upon information and belief, the Escrow Agent holds a total deposit of $54,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs MYUNG HEE JO and EDWARD RHEE HYUK JO under the applicable escrow agreement.

(d)    Plaintiffs MYUNG HEE JO and EDWARD RHEE HYUK JO (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

63.    Plaintiff DUK KUYUM KIM is an individual and resident of New York.

(a)    Under a purchase agreement dated April 5, 2008, Plaintiff DUK KUYUM KIM agreed to purchase unit PH3-N of Condominium Tower 3 from the Sponsor for a purchase price of $770,000.00 under the terms and conditions thereof.

(b)     Plaintiff DUK KUYUM KIM submitted an initial deposit of $77,000.00, payable to the previous escrow agent with his submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $77,000.00, plus accrued interest, in escrow for the benefit of Plaintiff DUK KUYUM KIM under the applicable escrow agreement.

(d)     Plaintiff DUK KUYUM KIM (i) never received notice from the Sponsor that he had a right to revoke his purchase agreement under ILSA; (ii) did not learn about his revocation right until after the two-year period to revoke had expired; (iii) would have exercised his revocation option during the two-year period, if he had been informed of that right; and (iv) has incurred damages as a result.

64.     Plaintiff HYUN SOOK KIM is an individual and resident of New York.

(a)     Under a purchase agreement dated July 23, 2008, Plaintiff HYUN SOOK KIM agreed to purchase unit 6Q of Condominium Tower 3 from the Sponsor for a purchase price of $560,000.00 under the terms and conditions thereof.

(b)     Plaintiff HYUN SOOK KIM submitted an initial deposit of $56,000.00, payable to the previous escrow agent with his submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $56,000.00, plus accrued interest, in escrow for the benefit of Plaintiff HYUN SOOK KIM under the applicable escrow agreement.

(d)     Plaintiff HYUN SOOK KIM (i) never received notice from the Sponsor that he had a right to revoke his purchase agreement under ILSA; (ii) did not learn about

his revocation right until after the two-year period to revoke had expired; (iii) would have exercised his revocation option during the two-year period, if he had been informed of that right; and (iv) has incurred damages as a result.

65. Plaintiffs KANG SAN KIM and YOUNG OK KIM are individuals and residents of New York.

 (a) Under a purchase agreement dated March 7, 2008, Plaintiffs KANG SAN KIM and YOUNG OK KIM agreed to purchase unit 12R of Condominium Tower 3 from the Sponsor for a purchase price of $1,215,000.00 under the terms and conditions thereof.

 (b) Plaintiffs KANG SAN KIM and YOUNG OK KIM submitted an initial deposit of $121,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

 (c) Upon information and belief, the Escrow Agent holds a total deposit of $121,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs KANG SAN KIM and YOUNG OK KIM under the applicable escrow agreement.

 (d) Plaintiffs KANG SAN KIM and YOUNG OK KIM (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

66. Plaintiffs MI K. KIM and KI H. KIM are individuals and residents of New York.

(a)     Under a purchase agreement dated February 27, 2008, Plaintiffs MI K. KIM and KI H. KIM agreed to purchase unit 9Q of Condominium Tower 3 from the Sponsor for a purchase price of $530,000.00 under the terms and conditions thereof.

(b)     Plaintiffs MI K. KIM and KI H. KIM submitted an initial deposit of $53,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $53,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs MI K. KIM and KI H. KIM under the applicable escrow agreement.

(d)     Plaintiffs MI K. KIM and KI H. KIM (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

67.     Plaintiffs MYONG JOONG KIM and YEONG UK KIM are individuals and residents of New York.

(a)     Under a purchase agreement dated September 3, 2008, Plaintiffs MYONG JOONG KIM and YEONG UK KIM agreed to purchase unit PH1J of Condominium Tower 1 from the Sponsor for a purchase price of $715,000.00 under the terms and conditions thereof.

(b)     Plaintiffs MYONG JOONG KIM and YEONG UK KIM submitted an initial deposit of $71,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $71,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs MYONG JOONG KIM and YEONG UK KIM under the applicable escrow agreement.

(d)     Plaintiffs MYONG JOONG KIM and YEONG UK KIM (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

68.   Plaintiff YOUNG JA KWON is an individual and resident of New York.

(a)     Under a purchase agreement dated March 9, 2008, Plaintiff YOUNG JA KWON agreed to purchase unit 9N of Condominium Tower 3 from the Sponsor for a purchase price of $735,000.00 under the terms and conditions thereof.

(b)     Plaintiff YOUNG JA KWON submitted an initial deposit of $73,500.00, payable to the previous escrow agent with his submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $73,500.00, plus accrued interest, in escrow for the benefit of Plaintiff YOUNG JA KWON under the applicable escrow agreement.

(d)     Plaintiff YOUNG JA KWON (i) never received notice from the Sponsor that he had a right to revoke his purchase agreement under ILSA; (ii) did not learn about his revocation right until after the two-year period to revoke had expired; (iii) would have

exercised his revocation option during the two-year period, if he had been informed of that right; and (iv) has incurred damages as a result.

69.     Plaintiffs TOM LAI and DIANA HUI LAI are individuals and residents of New York.

(a)     Under a purchase agreement dated February 26, 2008, Plaintiffs TOM LAI and DIANA HUI LAI agreed to purchase unit 12A of Condominium Tower 3 from the Sponsor for a purchase price of $890,000.00 under the terms and conditions thereof.

(b)     Plaintiffs TOM LAI and DIANA HUI LAI submitted an initial deposit of $89,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $89,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs TOM LAI and DIANA HUI LAI under the applicable escrow agreement.

(d)     Plaintiffs TOM LAI and DIANA HUI LAI (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

70.     Plaintiffs HANG KEI LEE and YU LEE are individuals and residents of New Jersey.

(a)     Under a purchase agreement dated February 25, 2008, Plaintiffs HANG KEI LEE and YU LEE agreed to purchase unit 10G of Condominium Tower 3 from the Sponsor for a purchase price of $455,000.00 under the terms and conditions thereof.

(b)     Plaintiffs HANG KEI LEE and YU LEE submitted an initial deposit of $45,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $45,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs HANG KEI LEE and YU LEE under the applicable escrow agreement.

(d)     On or about June 14, 2010, Plaintiffs HANG KEI LEE and YU LEE filed an application with the Attorney General of the State of New York to seek the return of all money held on deposit under their purchase agreement.

(e)     Plaintiffs HANG KEI LEE and YU LEE (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

71.     Plaintiffs AMY LEUNG and WING YUEN LEUNG are individuals and residents of New York.

(a)     Under a purchase agreement dated February 20, 2008, Plaintiffs AMY LEUNG and WING YUEN LEUNG agreed to purchase unit 9B of Condominium Tower 3 from the Sponsor for a purchase price of $685,000.00 under the terms and conditions thereof.

(b)     Plaintiffs AMY LEUNG and WING YUEN LEUNG submitted an initial deposit of $68,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $68,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs AMY LEUNG and WING YUEN LEUNG under the applicable escrow agreement.

(d)     Plaintiffs AMY LEUNG and WING YUEN LEUNG (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

72.     Plaintiffs WILLIAM LIEW and NANCY A. CHAN are individuals and residents of New York.

(a)     Under a purchase agreement dated February 24, 2008, Plaintiffs WILLIAM LIEW and NANCY A. CHAN agreed to purchase unit 6B of Condominium Tower 3 from the Sponsor for a purchase price of $730,000.00 under the terms and conditions thereof.

(b)     Plaintiffs WILLIAM LIEW and NANCY A. CHAN submitted an initial deposit of $73,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $73,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs WILLIAM LIEW and NANCY A. CHAN under the applicable escrow agreement.

(d)     On or about July 2, 2010, Plaintiffs WILLIAM LIEW and NANCY A. CHAN, through their attorney, sent a letter to the Sponsor and the Escrow Agent

demanding to cancel their purchase agreement and immediate payment of all money held on deposit under the purchase agreement.

(e)     Neither the Sponsor nor the Escrow Agent has made any payment to Plaintiffs WILLIAM LIEW and NANCY A. CHAN as demanded by their letter.

(f)     Plaintiffs WILLIAM LIEW and NANCY A. CHAN (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

73.     Plaintiffs EUN KYUNG NO and YUNHWA NO are individuals and residents of New York.

(a)     Under a purchase agreement dated February 27, 2008, Plaintiffs EUN KYUNG NO and YUNHWA NO agreed to purchase unit 9A of Condominium Tower 3 from the Sponsor for a purchase price of $905,000.00 under the terms and conditions thereof.

(b)     Plaintiffs EUN KYUNG NO and YUNHWA NO submitted an initial deposit of $90,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $90,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs EUN KYUNG NO and YUNHWA NO under the applicable escrow agreement.

(d)    Plaintiffs EUN KYUNG NO and YUNHWA NO (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

74.    Plaintiff JONG HWAN NO is an individual and resident of New York.

(a)    Under a purchase agreement dated April 26, 2008, Plaintiff JONG HWAN NO agreed to purchase unit 9M of Condominium Tower 3 from the Sponsor for a purchase price of $665,000.00 under the terms and conditions thereof.

(b)    Plaintiff JONG HWAN NO submitted an initial deposit of $66,500.00, payable to the previous escrow agent with his submission of the purchase agreement to the Sponsor.

(c)    Upon information and belief, the Escrow Agent holds a total deposit of $66,500.00, plus accrued interest, in escrow for the benefit of Plaintiff JONG HWAN NO under the applicable escrow agreement.

(d)    Plaintiff JONG HWAN NO (i) never received notice from the Sponsor that he had a right to revoke his purchase agreement under ILSA; (ii) did not learn about his revocation right until after the two-year period to revoke had expired; (iii) would have exercised his revocation option during the two-year period, if he had been informed of that right; and (iv) has incurred damages as a result.

75.    Plaintiffs BAK HO SHIN and YOO SUN SHIN are individuals and residents of New York.

(a)     Under a purchase agreement dated March 31, 2008, Plaintiffs BAK HO SHIN and YOO SUN SHIN agreed to purchase unit 14L of Condominium Tower 3 from the Sponsor for a purchase price of $760,000.00 under the terms and conditions thereof.

(b)     Plaintiffs BAK HO SHIN and YOO SUN SHIN submitted an initial deposit of $76,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $76,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs BAK HO SHIN and YOO SUN SHIN under the applicable escrow agreement.

(d)     Plaintiffs BAK HO SHIN and YOO SUN SHIN (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

76.     Plaintiffs CLEMENT TSO and LIN LO TSO are individuals and residents of New York.

(a)     Under a purchase agreement dated February 26, 2008, Plaintiffs CLEMENT TSO and LIN LO TSO agreed to purchase unit 10A of Condominium Tower 3 from the Sponsor for a purchase price of $870,000.00 under the terms and conditions thereof.

(b)     Plaintiffs CLEMENT TSO and LIN LO TSO submitted an initial deposit of $87,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $87,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs CLEMENT TSO and LIN LO TSO under the applicable escrow agreement.

(d)     On or about July 15, 2010, Plaintiffs CLEMENT TSO and LIN LO TSO, through their attorney, sent a letter to the Escrow Agent demanding to cancel their purchase agreement and immediate payment of all money held on deposit under the purchase agreement.

(e)     Neither the Sponsor nor the Escrow Agent has made any payment to Plaintiffs CLEMENT TSO and LIN LO TSO as demanded by their letter.

(f)     Plaintiffs CLEMENT TSO and LIN LO TSO (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

77.     Plaintiffs YIN QING WENG and LI PING WENG are individuals and residents of New York.

(a)     Under a purchase agreement dated February 24, 2008, Plaintiffs YIN QING WENG and LI PING WENG agreed to purchase unit 10L of Condominium Tower 3 from the Sponsor for a purchase price of $705,000.00 under the terms and conditions thereof.

(b)     Plaintiffs YIN QING WENG and LI PING WENG submitted an initial deposit of $70,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $70,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs YIN QING WENG and LI PING WENG under the applicable escrow agreement.

(d)     Plaintiffs YIN QING WENG and LI PING WENG (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

78.     Plaintiff BO KOON WONG is an individual and resident of New York.

(a)     Under a purchase agreement dated February 22, 2008, Plaintiff BO KOON WONG agreed to purchase unit 10C of Condominium Tower 3 from the Sponsor for a purchase price of $475,000.00 under the terms and conditions thereof.

(b)     Plaintiff BO KOON WONG submitted an initial deposit of $47,500.00, payable to the previous escrow agent with his submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $47,500.00, plus accrued interest, in escrow for the benefit of Plaintiff BO KOON WONG under the applicable escrow agreement.

(d)     Plaintiff BO KOON WONG (i) never received notice from the Sponsor that he had a right to revoke his purchase agreement under ILSA; (ii) did not learn about his revocation right until after the two-year period to revoke had expired; (iii) would have

exercised his revocation option during the two-year period, if he had been informed of that right; and (iv) has incurred damages as a result.

79.     Plaintiffs MEI LUK WONG and HOWARD WONG are individuals and residents of New York.

(a)     Under a purchase agreement dated April 24, 2008, Plaintiffs MEI LUK WONG and HOWARD WONG agreed to purchase unit 12F of Condominium Tower 3 from the Sponsor for a purchase price of $490,000.00 under the terms and conditions thereof.

(b)     Plaintiffs MEI LUK WONG and HOWARD WONG submitted an initial deposit of $49,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $49,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs MEI LUK WONG and HOWARD WONG under the applicable escrow agreement.

(d)     Plaintiffs MEI LUK WONG and HOWARD WONG (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

80.     Plaintiff PEI CHING YU is an individual and resident of New York.

(a)     Under a purchase agreement dated May 20, 2008, Plaintiff PEI CHING YU agreed to purchase unit 7E of Condominium Tower 3 from the Sponsor for a purchase price of $635,000.00 under the terms and conditions thereof.

(b)     Plaintiff PEI CHING YU submitted an initial deposit of $63,500.00, payable to the previous escrow agent with his submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $63,500.00, plus accrued interest, in escrow for the benefit of Plaintiff PEI CHING YU under the applicable escrow agreement.

(d)     Plaintiff PEI CHING YU (i) never received notice from the Sponsor that he had a right to revoke his purchase agreement under ILSA; (ii) did not learn about his revocation right until after the two-year period to revoke had expired; (iii) would have exercised his revocation option during the two-year period, if he had been informed of that right; and (iv) has incurred damages as a result.

81.     Plaintiffs POK-YUEN YU and YUET CHU CHAN are individuals and residents of New York.

(a)     Under a purchase agreement dated February 22, 2008, Plaintiffs POK-YUEN YU and YUET CHU CHAN agreed to purchase unit 10B of Condominium Tower 3 from the Sponsor for a purchase price of $690,000.00 under the terms and conditions thereof.

(b)     Plaintiffs POK-YUEN YU and YUET CHU CHAN submitted an initial deposit of $69,000.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $69,000.00, plus accrued interest, in escrow for the benefit of Plaintiffs POK-YUEN YU and YUET CHU CHAN under the applicable escrow agreement.

(d)     Plaintiffs POK-YUEN YU and YUET CHU CHAN (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

82.     Plaintiffs NGAN CHO YUNG and GUO PING YANG are individuals and residents of New York.

(a)     Under a purchase agreement dated February 24, 2008, Plaintiffs NGAN CHO YUNG and GUO PING YANG agreed to purchase unit 12L of Condominium Tower 3 from the Sponsor for a purchase price of $725,000.00 under the terms and conditions thereof.

(b)     Plaintiffs NGAN CHO YUNG and GUO PING YANG submitted an initial deposit of $72,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $72,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs NGAN CHO YUNG and GUO PING YANG under the applicable escrow agreement.

(d)     Plaintiffs NGAN CHO YUNG and GUO PING YANG (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under

ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

83.     Plaintiffs NGAN TUNG YUNG and YEUK NAM POON are individuals and residents of New York.

(a)     Under a purchase agreement dated February 23, 2008, Plaintiffs NGAN TUNG YUNG and YEUK NAM POON agreed to purchase unit PH3-R of Condominium Tower 3 from the Sponsor for a purchase price of $1,205,000.00 under the terms and conditions thereof.

(b)     Plaintiffs NGAN TUNG YUNG and YEUK NAM POON submitted an initial deposit of $120,500.00, payable to the previous escrow agent with their submission of the purchase agreement to the Sponsor.

(c)     Upon information and belief, the Escrow Agent holds a total deposit of $120,500.00, plus accrued interest, in escrow for the benefit of Plaintiffs NGAN TUNG YUNG and YEUK NAM POON under the applicable escrow agreement.

(d)     Plaintiffs NGAN TUNG YUNG and YEUK NAM POON (i) never received notice from the Sponsor that they had a right to revoke their purchase agreement under ILSA; (ii) did not learn about their revocation right until after the two-year period to revoke had expired; (iii) would have exercised their revocation option during the two-year period, if they had been informed of that right; and (iv) have incurred damages as a result.

84.     Plaintiffs SUE CHAN, STEPHANIE CHAN, HUAN JEN CHIN, HSUE TSUI CHIN, THOMAS S. CHIU, ZIAO HE MEI, KI SOOK CHOE, HA LIM CHOE, CECILIA CHIK TO CHU, MICHAEL CHUANG, KONNIE CHUANG, JOY HONG, SONYA HONG, YANG HWI HONG, BU IK HONG, YOUNG A. HONG, CHUN HSUIH, TERENCE HSUIH, VICTOR HSUIH, WON HWANG, SUNG CHUL HWANG, JIAN JIN, MYUNG HEE JO, EDWARD RHEE HYUK JO, DUK KUYUM KIM, HYUN SOOK KIM, KANG SAN KIM, YOUNG OK KIM, MI K. KIM, KI H. KIM, MYONG JOONG KIM, YEONG UK KIM, YOUNG JA KWON, TOM LAI, DIANA HUI LAI, HANG KEI LEE, YU LEE, AMY LEUNG, WING YUEN LEUNG, WILLIAM LIEW, NANCY A. CHAN, EUN KYUNG NO, YUNHWA NO, JONG HWAN NO, BAK HO SHIN, YOO SUN SHIN, CLEMENT TSO, LIN LO TSO, YIN QING WENG, LI PING WENG, BO KOON WONG, MEI LUK WONG, HOWARD WONG, PEI CHING YU, POK-YUEN YU, YUET CHU CHAN, NGAN CHO YUNG, GUO PING YANG, NGAN TUNG YUNG, and YEUK NAM POON collectively constitute the Equitably Revoking Plaintiffs.

## JURISDICTION AND VENUE

85.     Jurisdiction is proper in this Court as to Claim I, Claim II, Claim III, and Claim IV under both 28 U.S.C. § 1331, the general federal question jurisdiction statute, and 15 U.S.C. § 1719, the provision of ILSA granting jurisdiction to United States district courts over actions to enforce ILSA's provisions.

86.     Jurisdiction is proper in this Court as to Claim V under supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

87.     Venue is proper in this District under both 28 U.S.C. § 1391, the general venue statute, and 15 U.S.C. § 1719, ILSA's venue provision, in that certain Defendants are present and may be found in this District, the Condominium Units were offered for sale in this District, and

the sales contracts at issue were entered into in this District, and the Condominium units at issue are located in this District.

## THE SKY VIEW PARC OFFERING

88.     Sky View Parc Residential Condominium Tower Three ("Tower Three Condominium") is a mixed commercial and residential condominium being marketed by the Sponsor consisting of a newly constructed building located at 40-28 College Point Boulevard, Flushing, New York 11354.

89.     169 residential condominium units in the Tower Three Condominium were officially offered to the public by the Sponsor in an Offering Plan (the "Tower Three Offering Plan") that was accepted for filing by the Attorney General of the State of New York on October 19, 2007, and in a Restated Offering Plan which was accepted for filing by the Attorney General of the State of New York on February 1, 2008.

90.     Sky View Parc Residential Condominium Tower One & Tower Two ("Tower One & Tower Two Condominium") is a mixed commercial and residential condominium being marketed by the Sponsor consisting of newly constructed buildings located at 40-26 (Tower One) and 40-28 (Tower Two) College Point Boulevard, Flushing, New York 11354.

91.     279 residential condominium units in the Tower One & Two Condominium were officially offered to the public by the Sponsor in an Offering Plan (the "Tower One & Tower Two Offering Plan") that was accepted for filing by the Attorney General of the State of New York on July 17, 2008.

92.     The Tower Three Condominium and the Tower One & Two Condominium (together, the "Condominium") were marketed under a common promotional plan under the Sky View Parc name, along with up to four additional proposed residential condominium towers to

be constructed in later phases of the development, which was ultimately planned to contain up to 1,300 residential units.

93. Upon information and belief, the Sponsor has entered into purchase agreements for the sale of 105 units of the Tower Three Condominium and 50 units of the Tower One & Tower Two Condominium, for a total of 155 units of the Condominium development as a whole.

94. In marketing the Condominium, the Sponsor used means or instruments of transportation or communication in interstate and international commerce, including the U.S. Postal Service, interstate courier services, the telephones, the internet (including the Sponsor's website) and other forms of electronic communications.

95. At the time each of the Plaintiffs executed their respective purchase agreements, the Condominium units they were contracting to purchase had not been constructed and were not habitable.

96. In connection with its marketing efforts, the Sponsor provided each of the Plaintiffs with the Tower Three Offering Plan or the Tower One & Tower Two Offering Plan, as applicable to each Plaintiff, prior to the execution of the contract to purchase a unit of the Condominium.

97. The Sponsor did not, however, provide any of the Plaintiffs, or anyone else actually or purportedly acting on the Plaintiffs' behalf, with any property disclosure in the form specified under ILSA and its regulations.

98. In marketing the Condominium, the Sponsor and its sales agents assured purchasers and potential purchasers, including the Plaintiffs, that mortgage financing of the units would be available.

99.     The Sponsor and its sales agents published a list of preferred lenders, which they represented to purchasers and potential purchasers, including the Plaintiffs, would be willing and able to provide mortgage financing.

100.    By late 2008, the credit markets had greatly curtailed the flow of lending to buyers, and mortgage financing for the purchase of units of the Condominium became impossible or nearly impossible to obtain.

101.    In March 2008, one of the last outposts of lending, Fannie Mae and Freddie Mac, put the brakes on loans to buyers by requiring sales of at least 70 percent of a building's units in order for its buyers to obtain a loan.

102.    Although that policy later changed to 50 percent and "sold" became "in contract" for most lenders' purposes, many developers no longer had the capital to deliver new buildings as promised in their marketing materials.

103.    As a result of this loss of financing, many purchasers in contract to buy a unit in the Condominium, including the Plaintiffs, became unable to close on their units.

### **PLAINTIFFS' ENTITLEMENT TO REVOKE UNDER ILSA**

104.    Under 15 U.S.C. § 1703(a)(1)(B), it is unlawful to sell a lot of real estate (including a condominium unit) that is not exempt under ILSA "unless a printed property report, meeting the requirements of section 1707 of [ILSA], has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser."

105.    Under 15 U.S.C. § 1703(c), where there is "any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee

within two years from the date of such signing, and such contract or agreement shall clearly provide this right."

106.    As the Sponsor did not provide any of the Plaintiffs, or anyone actually or purportedly acting on Plaintiffs' behalf, with a property report in the form required by ILSA before their respective purchase agreements were signed, Plaintiffs had the right to revoke their respective purchase agreements within two years from the date the purchase agreements were signed, unless an ILSA exemption applies.

107.    Under ILSA and its regulations and controlling HUD interpretive guidelines, a revocation need not be in any particular form, and oral revocations are effective.

## NO ILSA EXEMPTIONS APPLY

108.    Under 15 U.S.C. § 1702 and the regulations issued thereunder, certain transactions are exempt from the application of all or parts of ILSA.

109.    However, none of these exemptions apply to the purchase transactions at issue herein.

### The Two-Year Construction Exemption

110.    The purchase agreements entered into by the Plaintiffs were signed prior to the time that the units were constructed or habitable.

111.    The purchase agreements entered into by the Plaintiffs did not require that construction of the units be completed within two years of their execution.

112.    As such, the purchase agreements entered into by the Plaintiffs are not exempt under 15 U.S.C. § 1702(a)(2).

### The Builder's Exemption

113.    The purchase agreements entered into by the Plaintiffs contemplated that the units would be sold fully constructed and ready for residential use, and not as a lot upon which the vendees would construct buildings.

114.    As such, the purchase agreements entered into by the Plaintiffs are not exempt under 15 U.S.C. § 1702(a)(7).

### The Bona Fide Land Sales Exemption

115.    Each of the Revoking Plaintiffs and the Equitably Revoking Plaintiffs are individuals who are not in the bona fide land sales business.

116.    If the Sponsor were to have elected to take advantage of the bona fide land sales exemption with respect to any of the Plaintiffs, it would have been required to obtain and maintain records establishing that the exemption applies to such Plaintiff.

117.    The Sponsor never requested any information from any of the Plaintiffs to demonstrate that such Plaintiffs were in the bona fide land sales business.

118.    Upon information and belief, the Sponsor does not maintain any records to demonstrate that any of the Plaintiffs are in a bona fide land sales business.

119.    As such, the purchase agreements entered into by the Plaintiffs are not exempt under 24 C.F.R. § 1710.14(a)(3).

### The 100 Unit Exemption

120.    At the time each of the Plaintiffs signed their respective purchase agreements, the Sponsor offered 448 units for sale under the Offering Plans.

121.    At the time each of the Plaintiffs signed their respective purchase agreements, the Sponsor offered 448 units for sale under the Offering Plans.

122.    At the times when the Revoking Plaintiffs revoked their purchase agreements, either by their respective Revocation Letters or orally, the Sponsor offered 448 units for sale under the Offering Plans.

123.    On information and belief, the Sponsor has entered into purchase agreements for the sale of a total of 155 units of the Condominium, none of which were exempt under any provision of ILSA.

124.    As such, at all relevant times, the Condominium was not exempt under 15 U.S.C. § 1702(b)(1), which exempts developments containing fewer than 100 units not otherwise exempt, either individually or in conjunction with any other exemptions.

### The Intrastate Offering Exemption

125.    At the time each of the Plaintiffs signed their respective purchase agreements, the Offering Plans for the Condominium did not place any limitations on who may purchase offered units of the Condominium, including any limitations on out-of-state purchasers.

126.    Indeed, the offering plans specifically stated: "There are no limitations on who may purchase such offered Units."

127..    Certain Plaintiffs who signed purchase agreements with the Sponsor reside in states other than New York.

128.    The respective purchase agreements signed by the Plaintiffs did not contain a nonwaivable provision specifying that the contract or agreement may be revoked at the option of the purchaser until midnight of the seventh day following the signing of such contract or agreement.

129.    As such, the purchase agreements the Plaintiffs entered into are not exempt under 15 U.S.C. § 1702(b)(7).

### No Other Exemptions Apply

130.   Further, the Sponsor has no basis to claim any ILSA exemption other than those discussed above.

131.   Accordingly, the Condominium is a development that is subject to ILSA and does not qualify under any of ILSA's exemptions.

132.   Likewise, the purchase agreements at issue herein are for lots of real estate that are not exempt under ILSA.

### EFFECT OF REVOCATION

133.   Because the Plaintiffs' respective purchase agreements were not exempt under ILSA, the Plaintiffs held a valid option to revoke their respective purchase agreements within two years of their having been signed under 15 U.S.C. § 1703(c).

134.   By their respective Revocation Letters and oral revocations, the Revoking Plaintiffs timely and validly revoked their respective purchase agreements.

135.   Under 15 U.S.C. § 1703(e), because their respective purchase agreements were validly revoked, each of the Revoking Plaintiffs "shall be entitled to all money paid by him or her under such contract or agreement."

136.   Under 15 U.S.C. § 1709(b), the Revoking Plaintiffs may bring an action at law or in equity to enforce their respective rights to revocation and return of their deposits under 15 U.S.C. § 1703(c) and (e).

137.   In addition to the return of their deposits, under 15 U.S.C. § 1709(c), the Revoking Plaintiffs are entitled to "interest, court costs, and reasonable amounts for attorneys' fees."

## PROPERTY NOT DESCRIBED IN RECORDABLE FORM

138.   As discussed above, the purchase agreements at issue herein are for lots of real estate that are not exempt under ILSA.

139.   Under 15 U.S.C. § 1703(d)(1), a purchaser may revoke within two years where the contract does not provide: "a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records" (unless a deed is issued within 180 days of contract signing).

140.   No deed for any of the units at issue was issued within 180 days of contract signing, or indeed ever issued.

141.   The purchase agreements at issue herein may be revoked within two years because they do not contain "a description of the lot . . . which is in a form acceptable for recording."

142.   Under New York Real Property Law ("RPL") § 294, a purchase agreement may only be recorded if it is "acknowledged or proved, and certified, in the manner to entitle a conveyance to be recorded."

143.   Each of the purchase agreements entered into by the Plaintiffs was not "acknowledged or proved, and certified, in the manner to entitle a conveyance to be recorded."

144.   The purchase agreement of each of the Plaintiffs expressly provides: "Purchaser may not record this Agreement or a memorandum thereof."

145.   As such, the purchase agreement of each Plaintiff is not in a form acceptable for recording under New York law.

146.   The New York Condominium Act, article 9-B of the RPL, sets forth, *inter alia*, the requirements for the legal description of a condominium unit lot to be acceptable for recording.

147. New York Real Property Law ("RPL") § 339-o provides, in relevant part:

Deeds and leases of units shall include the following particulars:

1. Description of the land as provided in subsection two of section three hundred thirty-nine-n and the liber, page and date of recording of the declaration or solely by naming the city, village or town and the county in which the unit is located and referring to the liber, page and date of recording of the declaration.

2. The unit designation of the unit in the declaration and any other data necessary for its proper identification.

148. Thus, for a New York condominium unit, "a description of the lot . . . which is in a form acceptable for recording" must contain, in addition to other requirements, "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration," which is information unavailable prior to the recording of the condominium's declaration.

149. Likewise, "[t]he unit designation of the unit in the declaration" is unavailable until the declaration is recorded.

150. Each of the purchase agreements at issue here did not contain "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration" of the Condominium.

151. Similarly, no other document provided to the Plaintiffs at or prior to the time when their respective purchase agreements were entered into contained "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration" of the Condominium.

152. The Condominium Declaration for Tower Three Condominium (the "Tower Three Declaration") was recorded in the Office of the New York City Register on December 17, 2009, and assigned City Register File No. ("CRFN") [the designation used by the City Register in lieu of liber and page] 2009000414020.

153. The Condominium Declaration for Tower One & Tower Two Condominium (the "Tower One & Tower Two Declaration") was recorded in the Office of the New York City Register on October 28, 2010, and assigned City Register File No. 2010000361456.

154. As such, "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration" of Tower Three Condominium and Tower One & Tower Two Condominium was not provided to the Plaintiffs at the time their respective purchase agreements were entered into because the Tower Three Declaration and the Tower One & Tower Two Declaration were not recorded until December 17, 2009, and October 28, 2010, respectively, and their CRFNs were not assigned until that date.

155. Each of the Plaintiffs' purchase agreements were signed prior to December 17, 2009.

156. Therefore, each of the Plaintiffs' purchase agreements could not have included "the liber, page [or equivalent used by the local recording officer] and date of recording of the declaration."

157. Accordingly, each of the Plaintiffs' purchase agreements did not contain "a description of the lot . . . which is in a form acceptable for recording."

### FAILURE TO DISCLOSE REVOCATION OPTION

158. Under HUD regulations issued pursuant to ILSA, including 24 C.F.R. §§ 1710.105(c) and (d) and 1710.209(f)(3), the Sponsor was required to disclose to the Plaintiffs in the property disclosure reports or on the face or signature page of the Plaintiffs' respective purchase agreements, that the purchaser had the option to revoke the purchase agreement within two years.

159. The Sponsor failed to disclose to any of the Plaintiffs that they had a two-year revocation option, either as required under the HUD regulations or in any other manner.

160.    The Equitably Revoking Plaintiffs did not learn of their revocation option until after the two-year period of the revocation option had expired.

161.    Further, although each of the Revoking Plaintiffs' revocations were valid, timely, and effective under ILSA, at the time such revocations were made, the Revoking Plaintiffs had not been made aware of their rights under ILSA and did not know that they had a right to revoke under ILSA.

162.    As such, to the extent that the revocations of the Revoking Plaintiffs may be determined to be ineffective or untimely under ILSA, such Revoking Plaintiffs should be considered Equitably Revoking Plaintiffs who would have validly and timely exercised their revocation right within the two-year revocation period had they been fully and properly informed of their rights.

163.    If the Sponsor had disclosed to the Equitably Revoking Plaintiffs that they had the option to revoke their respective purchase agreements within two years, and had such disclosure been made to the Equitably Revoking Plaintiffs within the two-year revocation period, the Equitably Revoking Plaintiffs would have timely exercised their revocation option.

164.    If the Equitably Revoking Plaintiffs had timely exercised their revocation option, under 15 U.S.C. § 1703(e), each of the Equitably Revoking Plaintiffs would have been "entitled to all money paid by him or her under such contract or agreement."

### FAILURE TO REGISTER AND ANTI-FRAUD

165.    As discussed above, 15 U.S.C. § 1703(a)(1)(B) requires a developer and its agents selling a non-exempt condominium unit to provide buyers with a printed property report meeting ILSA's requirements prior to their signing a purchase agreement.

166.    Similarly, under 15 U.S.C. § 1703(a)(1)(A), a developer and its agents are prohibited from selling a non-exempt condominium unit if a "statement of record" is not filed with HUD and in effect at the time of sale.

167.    Likewise, under 15 U.S.C. § 1703(a)(1)(D), a developer and its agents are prohibited from selling a non-exempt condominium unit using "advertising and promotional material which is inconsistent with information required to be disclosed in the property report."

168.    Further, under 15 U.S.C. § 1703(a)(2), a developer and its agents are prohibited from selling a non-exempt condominium unit (A) by employing any device, scheme, or artifice to defraud; (B) by means of any untrue statement of a material fact, or any omission of a material fact which makes the statements made misleading; or (C) through any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser.

169.    The Sponsor, as developer of the Condominium, failed to provide the Plaintiffs with a property report in the form required prior to when Plaintiffs signed their respective purchase agreements.

170.    The Sponsor, as developer of the Condominium, has never registered the Condominium with HUD.

171.    The Sponsor, as developer of the Condominium, provided the Plaintiffs with information inconsistent with that required to be disclosed in the property report.

172.    In particular, among other deviations from ILSA requirements, the materials Sponsor provided to the Plaintiffs, including the Offering Plans, did not disclose that the Plaintiffs were entitled to revoke their respective purchase agreements within two years if they were not provided with a property report prior to the execution of their purchase agreements.

173. The foregoing constitutes fraud, deceptive sales practices, untrue statements of material facts and omissions causing statements to be misleading.

174. Accordingly, the Sponsor has violated 15 U.S.C. §§ 1703(a)(1)(A), (a)(1)(B), (a)(1)(C), and (a)(2).

175. Under 15 U.S.C. § 1709(a) and (b), the Plaintiffs may bring an action to enforce their rights under ILSA, including revocation, equitable rescission, return of their deposits, and other relief.

176. Under 15 U.S.C. § 1709(c), in addition to such relief, the vendee is entitled to "interest, court costs, and reasonable amounts for attorneys' fees."

## CLAIM I -- ILSA REVOCATION UNDER 15 U.S.C. § 1703(c)

(By Revoking Plaintiffs Against the Sponsor and the Escrow Agent)

177. Plaintiffs repeat and reallege all of the foregoing paragraphs as though fully set forth herein.

178. Plaintiffs are the contract vendees under their respective purchase agreements for the purchase of lots of real property not exempt under ILSA.

179. Because the Sponsor did not provide the Plaintiffs with a property report in the form required by ILSA prior to the execution of their respective purchase agreements, the Plaintiffs had a valid option to revoke their purchase agreements.

180. The Revoking Plaintiffs validly and timely exercised their ILSA revocation within two years of signing their purchase agreements, as set forth above.

181. The Sponsor has refused to acknowledge that the Revoking Plaintiffs validly exercised their ILSA revocation option.

182. The Sponsor and the Escrow Agent have refused to refund the Revoking Plaintiffs' deposits, plus accrued interest, as required by ILSA.

183.    The Revoking Plaintiffs are each entitled to a judgment declaring that they have validly revoked their respective purchase agreements, directing the Sponsor and the Escrow Agent to refund their deposits, and awarding interest, costs, and reasonable attorneys' fees.

## CLAIM II – ILSA REVOCATION UNDER 15 U.S.C. § 1703(d)

(By Revoking Plaintiffs Against the Sponsor and the Escrow Agent)

184.    Plaintiffs repeat and reallege all of the foregoing paragraphs as though fully set forth herein.

185.    Plaintiffs are the contract vendees under their respective purchase agreements for the purchase of lots of real property not exempt under ILSA.

186.    Because the Plaintiffs' purchase agreements did not contain "a description of the lot . . . which is in a form acceptable for recording," the Plaintiffs had a valid option to revoke their purchase agreements.

187.    The Revoking Plaintiffs validly and timely exercised their ILSA revocation within two years of signing their purchase agreements, as set forth above.

188.    The Sponsor has refused to acknowledge that the Revoking Plaintiffs validly exercised their ILSA revocation option.

189.    The Sponsor and the Escrow Agent have refused to refund the Revoking Plaintiffs' deposits, plus accrued interest, as required by ILSA.

190.    The Revoking Plaintiffs are each entitled to a judgment declaring that they have validly revoked their respective purchase agreements, directing the Sponsor and the Escrow Agent to refund their deposits, and awarding interest, costs, and reasonable attorneys' fees.

## CLAIM III – EQUITABLE REVOCATION UNDER 15 U.S.C. §§ 1703 & 1709

### (By All Plaintiffs Against The Sponsor and the Escrow Agent)

191.    Plaintiffs repeat and reallege all of the foregoing paragraphs as though fully set forth herein.

192.    Plaintiffs are the contract vendees under their respective purchase agreements for the purchase of lots of real property not exempt under ILSA.

193.    Under ILSA, Plaintiffs had the right to revoke their respective purchase agreements within two years of the date of their signing.

194.    The Sponsor failed to give notice to Plaintiffs of their right to revoke their purchase agreements within two years.

195.    The Equitably Revoking Plaintiffs did not learn of their revocation option until after the two-year period of the revocation option expired.

196.    Had the Sponsor informed the Equitably Revoking Plaintiffs of their right to revoke their purchase agreements during the two-year period, the Equitably Revoking Plaintiffs would have exercised such right.

197.    As a result, the Equitably Revoking Plaintiffs are now equitably entitled to revoke their respective purchase agreements.

198.    To the extent that any Revoking Plaintiffs may have sought or desired to revoke their purchase agreements in a timely fashion under ILSA (whether or not they had knowledge of their rights under ILSA), but are held not to have done so in a timely or effective manner, such Revoking Plaintiffs are likewise now equitably entitled to revoke their purchase agreements.

199.    Each of the Plaintiffs has incurred damages as a result of the Sponsor's failure to give such Plaintiffs notice of their revocation option.

200.    The Plaintiffs are entitled to a judgment awarding equitable rescission, directing the Sponsor and the Escrow Agent to refund their deposits, and awarding interest, costs, and reasonable attorneys' fees.

## CLAIM IV -- REVOCATION AND DAMAGES UNDER 15 U.S.C. § 1703(a) & 1709

(By All Plaintiffs Against All Defendants except Escrow Agent)

201.    Plaintiffs repeat and reallege all of the foregoing paragraphs as though fully set forth herein.

202.    The Sponsor and the ILSA Agents have violated 15 U.S.C. § 1703(a) by, among other things, failing to provide the Plaintiffs with a property report, entering into purchase agreements with Plaintiffs without filing a statement of record with HUD and such statement being declared effective, and in effect, providing information inconsistent with that required in the property report and using false, deceptive, misleading and improper sales practices.

203.    The Sponsor and the ILSA Agents additionally violated 15 U.S.C. § 1703(a) by not providing, within Plaintiffs' purchase agreements, a description of the Unit in a form acceptable for recording because, among other things, the Plaintiffs' purchase agreements were not acknowledged, proved or certified before a notary public or other permitted official, and the purchase agreements did not have a unit description in the form required by RPL § 339-o, and further, that the Sponsor did not disclose that as a result thereof, the Plaintiffs had the right to revoke their purchase agreements within two years.

204.    The violations of 15 U.S.C. § 1703(a) by the Sponsor and the ILSA Agents were accomplished through the use of the means and instrumentalities of interstate commerce.

205.    As such, the Plaintiffs are entitled to damages and/or such other relief as the Court deems fair, just, and equitable, plus interest, costs and reasonable attorneys' fees against the Sponsor.

## CLAIM V -- UNJUST ENRICHMENT

(By All Plaintiffs Against the Sponsor and the Escrow Agent)

206.    Plaintiffs repeat and reallege all of the foregoing paragraphs as though fully set forth herein.

207.    The Sponsor and the Escrow Agent currently hold funds of the Plaintiffs in the amounts set forth above.

208.    Such funds are held under no valid contract, agreement, or other legal authority.

209.    The Sponsor and the Escrow Agent are not entitled to hold any such funds of the Plaintiffs.

210.    The Sponsor and the Escrow Agent have failed to return such funds.

211.    The Sponsor and the Escrow Agent have been unjustly enriched as a result of their retention of such funds.

212.    As such, the Plaintiffs are entitled to a judgment against the Sponsor and the Escrow Agent in the amounts set forth above, plus all accrued interest on the ground of unjust enrichment.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for each of the Claims herein for which such a trial by jury is available.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment against the Defendants as follows:

A.    Declaring that the Revoking Plaintiffs have validly revoked their respective purchase agreements pursuant to 15 U.S.C. § 1703(c) & (d);

B.  Declaring that all Plaintiffs are entitled to equitable revocation of their respective purchase agreements pursuant to 15 U.S.C. § 1703(c) & (d);

C.  Awarding money damages against the Defendants in favor of each Plaintiff as follows:

    i.  Plaintiffs JONATHAN LEE and CHUNG JOO LEE in the amount of $69,000.00, plus all accrued interest;

    ii.  Plaintiffs YI FENG ZHANG and LEI GU in the amount of $158,500.00, plus all accrued interest;

    iii.  Plaintiffs JENNIFER R. LEE and JOHN LEE in the amount of $43,000.00, plus all accrued interest;

    iv.  Plaintiffs SUZANNE LEE and JENNIFER R. LEE in the amount of $49,500.00, plus all accrued interest;

    v.  Plaintiffs MICHAEL CHUANG and KONNIE CHUANG in the amount of $73,500.00, plus all accrued interest;

    vi.  Plaintiffs SUE CHAN and STEPHANIE CHAN in the amount of $70,500.00, plus all accrued interest;

    vii.  Plaintiffs HUAN JEN CHIN and HSUE TSUI CHIN in the amount of $71,500.00, plus all accrued interest;

    viii.  Plaintiffs THOMAS S. CHIU and ZIAO HE MEI in the amount of $69,000.00, plus all accrued interest;

    ix.  Plaintiffs KI SOOK CHOE and HA LIM CHOE in the amount of $72,000.00, plus all accrued interest;

x.      Plaintiff CECILIA CHIK TO CHU in the amount of $47,000.00, plus all accrued interest;

xi.      Plaintiffs JOY HONG and SONYA HONG in the amount of $67,500.00, plus all accrued interest;

xii.      Plaintiffs YANG HWI HONG and BU IK HONG in the amount of $64,500.00, plus all accrued interest;

xiii.      Plaintiff YOUNG A. HONG in the amount of $118,500.00, plus all accrued interest;

xiv.      Plaintiffs CHUN HSUIH, TERENCE HSUIH, and VICTOR HSUIH in the amount of $140,000.00, plus all accrued interest;

xv.      Plaintiffs WON HWANG and SUNG CHUL HWANG in the amount of $68,500.00, plus all accrued interest;

xvi.      Plaintiff JIAN JIN in the amount of $73,500.00, plus all accrued interest;

xvii.      Plaintiffs MYUNG HEE JO and EDWARD RHEE HYUK JO in the amount of $54,500.00, plus all accrued interest;

xviii.      Plaintiff DUK KUYUM KIM in the amount of $77,000.00, plus all accrued interest;

xix.      Plaintiff HYUN SOOK KIM in the amount of $56,000.00, plus all accrued interest;

xx.      Plaintiffs KANG SAN KIM and YOUNG OK KIM in the amount of $121,500.00, plus all accrued interest;

xxi.      Plaintiffs MI K. KIM and KI H. KIM in the amount of $53,000.00, plus all accrued interest;

xxii.    Plaintiffs MYONG JOONG KIM and YEONG UK KIM in the amount of $71,500.00, plus all accrued interest;

xxiii.    Plaintiff YOUNG JA KWON in the amount of $73,500.00, plus all accrued interest;

xxiv.    Plaintiffs TOM LAI and DIANA HUI LAI in the amount of $89,000.00, plus all accrued interest;

xxv.    Plaintiffs HANG KEI LEE and YU LEE in the amount of $45,500.00, plus all accrued interest;

xxvi.    Plaintiffs AMY LEUNG and WING YUEN LEUNG in the amount of $68,500.00, plus all accrued interest;

xxvii.    Plaintiffs WILLIAM LIEW and NANCY A. CHAN in the amount of $73,000.00, plus all accrued interest;

xxviii.    Plaintiffs EUN KYUNG NO and YUNHWA NO in the amount of $90,500.00, plus all accrued interest;

xxix.    Plaintiff JONG HWAN NO in the amount of $66,500.00, plus all accrued interest;

xxx.    Plaintiffs BAK HO SHIN and YOO SUN SHIN in the amount of $76,000.00, plus all accrued interest;

xxxi.    Plaintiffs CLEMENT TSO and LIN LO TSO in the amount of $87,000.00, plus all accrued interest;

xxxii.    Plaintiffs YIN QING WENG and LI PING WENG in the amount of $70,500.00, plus all accrued interest;

xxxiii.    Plaintiff BO KOON WONG in the amount of $47,500.00, plus all accrued interest;

xxxiv.    Plaintiffs MEI LUK WONG and HOWARD WONG in the amount of $49,000.00, plus all accrued interest;

xxxv.    Plaintiff PEI CHING YU in the amount of $63,500.00, plus all accrued interest;

xxxvi.    Plaintiffs POK-YUEN YU and YUET CHU CHAN in the amount of $69,000.00, plus all accrued interest;

xxxvii.    Plaintiffs NGAN CHO YUNG and GUO PING YANG in the amount of $72,500.00, plus all accrued interest; and

xxxviii.    Plaintiffs NGAN TUNG YUNG and YEUK NAM POON in the amount of $120,500.00, plus all accrued interest;

D.    Directing Defendant MICHAEL LEVITT & RUBENSTEIN, LLC, as ESCROW AGENT, to remit to Plaintiffs all monies held on deposit under Plaintiffs' respective purchase agreements;

E.    Awarding interest, costs and reasonable attorneys' fees against the Defendants; and

F.    Granting such other and further relief as may be just and proper.

Dated: New York, New York
       November 15, 2010

                                        ADAM LEITMAN BAILEY, P.C.

                                        By: _____
                                            Adam Leitman Bailey
                                            John M. Desiderio
                                            William J. Geller
                                            Scott J. Pashman

                                        120 Broadway, 17th Floor
                                        New York, New York 10271
                                        Phone: (212) 825-0365